24-12-128 Ms. Silva here for the appellant, Mr. Milligan here for the appellee. Ms. Silva, whenever you're settled and ready. Good morning. May it please the Court, Laura Silva on behalf of Appellant Rufino Robelo-Galo. I'm here today with Joseph DeBelder. The question before this Court is whether a grandson who lives four hours away has young children he cares for and has a full-time job to financially support those children is an available caregiver to his incapacitated grandfather under the plain and ordinary meaning of 1B113B3 subsection C. The Sentencing Commission defined an extraordinary and compelling family circumstance under subsection C as the incapacitation of the defendant's parent when the defendant would be the only available caregiver for that parent. Can I ask you a quick question, sort of a threshold question in my mind? Yes. About sort of the architecture of the statute here. We've said that eligibility determinations are subject to de novo review and then sort of the discretionary factors, not surprisingly, are subject to abusive discretion. Do you view this extraordinary and compelling circumstance as an eligibility determination? It follows the if clause in the statute. It reads like an eligibility determination. I'm just trying to make sure that I understand, like this piece of the statute is subject to what kind of review? Yes, I believe that it is subject, it is an eligibility factor and I think at the outset I would like to say that regardless of the standard, whether it be de novo or abusive discretion, we would prevail, but I do want to say that our, we were mistaken in our brief that this is an abusive discretion review. It's actually de novo review under Bryant because we review, this court reviews de novo interpretation of a sentencing guideline. So here's, and just to follow up on that question, I mean is it possible that there are really two questions here? One is sort of like the legal question of what available caregiver means and I, you know, I think that's kind of a legal question that we would have to answer de novo. And then the other question is whether this, is it grandson? Yes. This person is an available caregiver, which that seems more like a fact question that like a, you know, a district court would answer applying whatever law we established. Is, what about that way of looking at it? Yes, I would agree with you. We believe that first the definition or the standard of availability would be a legal question and then whether this person is an available caregiver would be a factual intense sort of review. But Judge Walker did not, our position is that Judge Walker didn't apply the correct legal interpretation. And so he doesn't get to, at least for our argument, we're not going to get into his factual findings per se, but more so how he interpreted available caregiver. And so on that first question, on the legal question, how do you think, I mean I know because I read your briefs, but I mean let's talk about like how you should interpret the phrase. Sure. So similar to this court's ordinary meaning analysis in Bryant, here we turn to several sources to interpret available caregiver under the sentencing guideline. First, dictionaries. As stated in page three and four of our reply brief, dictionaries define available as suitable or ready for use, readily accessible, and free or willing to do something. And in Cardall, which we cite to on page 18 of our initial brief, the Fourth Circuit defined available to provide care through its ordinary meaning as to provide what is necessary for the person's health, welfare, maintenance, and protection. And using this plain meaning definition, it's also supported by the guideline's purpose in expanding family circumstances. So in 2023, when the Sentencing Commission created subsection C, it was to address a distinct family circumstance, a defendant with an incapacitated parent that requires a primary caregiver to meet his daily needs. The expansion of this particular family circumstance was a response to case law that developed after the enactment of the First Step Act, particularly United States v. Bucci. And the analysis in Bucci is significant because it shows how the Sentencing Commission intended subsection C to be read. And there, the district court found that although Bucci's incapacitated mother had daytime home health aides, Mr. Bucci was the only available caregiver because she required overnight care. And only Bucci was willing and able to provide that. Can I ask you this before we get into comparisons about, and Judge Brasher's framing, sort of whether or not this person is the only available caregiver, but just, again, sort of definitionally. I guess I'm, I think I'm persuaded by your interpretation of that to mean able. I'm not sure I'm persuaded by your interpretation to require willingness. I mean, so is it your suggestion that if some family member who lives next door just says like, yeah, I don't really want to, I can't be bothered, that person's not an available caregiver? So I have a couple points to that. First, I would like to say that willingness is actually defined, is within the definition of available under the dictionary. Second, we propose a simple three-factor test. And in this three-factor test to determine a caregiver's availability, first and foremost, we have to consider the needs of the incapacitated. So if someone needs 24-hour care, an available caregiver has to be able to give care for those 24 hours. A second factor would be whether an alternate caregiver can provide the care. This means they want to, but because of circumstances beyond their control, like lack of resources or skill or capacity, they can't. And willingness has to be a factor. It's not the only factor, but it can be a factor. And there's- And so is unwillingness disqualifying? What do you mean? If the otherwise able, I won't say otherwise available, but the otherwise able caregiver says, oh yeah, I could, I just don't want to. Well, I think district courts have the discretion to know when someone is just willy-nilly saying they're unwilling and whether it's justifiable. So I think the best example to sort of understand willingness is, let's say a granddaughter doesn't want to take care of their grandfather because he sexually abused her. He requires 24-hour care. She has the capacity and the ability to do it, but she doesn't want to. She submits exhibits as to his violation towards her. Under the plain meaning of available, a district court should be able to give way to her unwillingness there and find her unavailable. This means that the district court can find her available if she- This also means that the district court can find her available if she fails to submit proper support or if it's- Her unwillingness is sort of conclusory. But regardless, in our three-factor test, we're proposing a highly individualized review where just willingness by itself isn't a factor, but it can be an important factor in cases like that. I think this goes towards the purpose for expanding into subsection C in that the sentencing committee wouldn't want to impose a burden on someone who is unwilling and then have a possible incapacitated parent be neglected because of this person's unwillingness. Let me ask you this. So on the willingness issue, I mean, you're right that the definition of available includes this sort of willing idea to it. One thing that I've been kind of kicking around my head is comparing- I'm not going to say this about your client, but I'm sure there are plenty of people in prison that are willing to care for their parents or grandparents because it gets them out of prison, right? They would otherwise not be willing, but they're willing because they would love to get out of prison to do that. It's better than being in prison. Is there some comparison to be made on that? So if someone is out there and saying, I'm unwilling to do it because I have a job that precludes me from doing it, and then we could look at the prisoner and say, well, if we let you out of prison, you would also have a job. So you're the same level of unwilling as this other person. I mean, I think what Judge Walker was saying here- I'll try to make this question make more sense. It seems like what Judge Walker was saying here is, look, the sort of standard degree of unwillingness out there in society to care for someone else and to kind of rearrange your life to do this does not make someone unavailable. That seems to be what he was saying. I understand. I at least in this case, it's impossible for the grandson to meet the needs of the caregiver. And I think in some of the cases that we cited to- Why is it impossible? Mr. Elmer, the grandson, lives in Honduras where the socioeconomic conditions aren't the best and job availability isn't great. And he has a family to take care of. He lives over four hours away, which is the equivalent of from here to Atlanta. So I get that. But I mean, the prison- like, your client right now is in prison. He lives farther away. He would have to have a job if he moved to Honduras. He has a family. He's in prison, though, so he's not burdened with taking care of his family. I guess it just seems like the reason your client doesn't have those same kinds of problems is because he's in prison. You could say that, but I think the main- What we're trying to address here is a genuine crisis of care. Mr. Jose Lorenzo, the grandfather, needs care. And the only person available to do that is Mr. Robelo Gallo. Can I ask you another question? It seems like what you've said in your briefs is that the grandson can't be, in effect, the sole caregiver. Why, though, not some collaboration between the grandson and Ms. Reyna? Ms. Reyna, as her doctors have established, she is unable to continue care. Well, is she unable to continue- Currently, she's the sole caregiver. Correct. So she is unable to continue being the sole caregiver. And maybe Elmer can't be the sole caregiver. But families pool resources all the time to take care of ailing loved ones. So why not some collaboration, which would render your client not the only available caregiver? Because there are others who can combine resources and provide the care. My understanding is that she can no longer participate in any type of caregiving of Mr. Jose Lorenzo. She is currently waiting for this appeal to finish. And her duties are on a timeline, essentially, because she herself needs care. And Mr. Elmer just simply cannot divide that time with her, even if it were possible. He has to remain in the city where he is at and take care of his family. And that sort of round-trip type of care dynamic just wouldn't work for him. It would be impossible, in fact. May I? I see my time is up. You've got rebuttal time coming back to you. You've got three minutes of rebuttal coming. Okay. Can I conclude? Is that okay? Yeah, please. This court should remand and instruct the district court to consider the three factors supported by the purpose and the ordinary meaning of available caregiver when determining whether the grandson can meet his grandfather's daily needs, which we conclude he cannot. Thank you. Very well. Thank you. Mr. Milligan? Good morning, Your Honors. Gary Milligan on behalf of the United States. Let me jump right in with the discussion of the definition of sole available caregiver and this idea of willingness that the appellant has brought up. The definition of available in the dictionary does include willingness. It's one of the parts of it. However, if we look at Bryant and some of the cases that have come out of this discussion of the role that the commission plays in promulgating these type of regulations, there's limits on that. And the limit in particular in this one is the fact that these conditions that are set, these rules are supposed to be extraordinary and compelling. And extraordinary and compelling has its own meaning. If you say that you're simply unwilling to do this and unwilling is enough, that is not extraordinary and compelling. And we know from Bryant, from Edison, from Evanescus, from the Supreme Court and the Labonte case that the commission's rules have to defer to what the statute says. Bryant says that and this court has said it repeatedly that this cannot be a situation where the commission passes something that doesn't comport with what the statute actually says. And extraordinary and compelling has its own meaning. It can't simply be inconvenient in this case. It can't simply be something that you don't want to do. There has to be an extraordinary reason. Okay, so I think you might be right that simple unwillingness isn't sort of properly part of this understanding. Candidly, I think you have way over-rotated in saying that someone is available unless that person is him or herself incapacitated. The government is going to pull back from that position. The brief that was written on this, I don't believe that that is an accurate statement. That it requires an incapacitation of, for example, Mr. Elmer, the grandson, to do this. I do think, and I think as I get into applying these standards to what Judge Walker did in this case, that Judge Walker's findings are sufficient. But the government is not arguing that it requires an incapacitation on the part of the non-prisoner, possible caretakers, to be unavailable. But it also cannot be simply being unwilling as well. So just to be clear, I never like to try to hang people by virtue of what they say at  But that sounds like a pretty deliberate decision to renounce the interpretive position that you've taken in the brief. And I just want to make sure that that's right. The brief, basically what was being written in that brief, Your Honors, was based upon the, I think the cases that were being cited there, were based upon the earlier pre-Section C talk about when you had two different parents and you had the child and the child had an issue and one of the parents was incapacitated. And that would be the other caregiver. We have a different situation under this. And so what you have is you have someone who must be the sole available caregiver. But there is no requirement by the commission that the other people on the outside be incapacitated. Okay. So I think that is one step too far to require that, for example, that Mr. Elmer has to be incapacitated not to be an available caregiver. But it has to be something more than-  And frankly, good on you for being willing to say so. Well, let me say something. Yeah. Yeah, I agree. Well, would you pull the microphone up to you? I asked her to pull it down. I'm asking you to pull it up. I'm failing in my presiding- I'm making everybody upset by- I'm checking the green light is still on. So-   I can move it up too. Oh, there you go. Is this better? There you go. That's what you should- Yeah, okay. Do whatever someone tells you. But I do have a question for you. So it seems like- So they have a three-part test that they're sort of suggesting. And this does seem to me like the kind of thing that, you know, we want to allow district courts to make fact findings. We want to basically let district courts determine, you know, we don't want to be determining on a kind of a de novo basis whether any particular person in Honduras is an available caregiver for any particular prisoner's family. But it does seem like we need to give some guidance about things that district courts should consider when determining whether someone is available or not. What do you say about their three-part test, which is sort of that there's a need, that, you know, there's kind of the degree to which an alternative can actually provide the care, and then like the willingness of an alternative to provide the care? I think, in general, the two first standards are basically right. I mean, I think one of the things that the court has to do is determine whether or not the person on the outside is incapacitated and the extent that they need care. Determining whether someone is an available caregiver will require a look at what the relative who needs the care is going to require. That makes a lot of sense. Can the alternative people provide the care? That's baked into this. I mean, if you're looking at sole available caregiver, then you have to determine whether the people on the outside are available caregivers themselves. The question, the third question is, what do we look at when we are looking at this question of what they call willingness? And basically, that factor cannot be simply willingness. It needs to be a factor where you look at, baked into kind of number two, are these people on the outside able to do this? Not are they willing to do this, but are they able to do this, and if there is some reason why they are saying that they can't, is that reason extraordinary and compelling? We get into a situation where basically if we are not looking at requiring those reasons that the people on the outside say they can't do it, if those reasons aren't extraordinary and compelling, then what we're getting into is a situation where the commission has passed a rule that essentially breaches what the statute requires. Well, let me float some ideas of a potential way to assess willingness. So, for example, we could say, look, a district court should analyze whether there's a legal barrier that would have to be overcome, right? So some of these potential caregivers that you mentioned in your brief are in the United States. They'd have to get to Honduras somehow. There might be legal barriers for them to overcome. Maybe there's like a knowledge barrier or some kind of other thing like that. With a lot of caregiving, you may be able to do it if you learned how to provide the right medications or something like that, but that could be a reason why you might be unwilling because you just don't want to overcome that knowledge barrier. And then another way to think about it would be whether the things that are preventing the alternative caregiver from doing it would be equally applicable to the prisoner if the prisoner were in the free world. What about those factors to tell a district court to consider? I think they are all good factors for the court to consider. I think that there should not be an exclusive set of factors. For example, I could think of really extreme cases. A person is the estranged son of the person who needs care, right, was abandoned by the father or mother when they were six months old, never encountered this person before, and suddenly this comes up and the fact that they exist out there comes up and they say, well, you're out there and you can do this. And that person is like, oh, H-E-double-L hockey sticks, no, I am not going to take care of this person. That person abandoned me. I will never, I will let them lay there on their bed and die before I will do this. That would be a reason for it. Saying, as we have here with the wife of Mr. Elmer, I have children that I'm taking care of full time, not that they have a job themselves necessarily, but I'm just, I don't want to do it because I have to take care of my kids. That seems to be sort of on the other end of the scale. And I think that there needs to be a, the courts need to understand that in looking at this, that the reasons why need to be extraordinary and compelling. But there's going to be a wide scope of reasons that are put before the court and the court needs a clear standard to look at, but not a set of examples or hard rules to look at. They need to be able to, you know, do what they do in these cases. And I do believe that what we're looking at here in terms of it is a two-factor, two different ways of looking at it. We have the eligibility determination, sorry, it's still on. I think we're still on. We have the eligibility determination that is de novo, right? That's the first thing. But once you say, hey, I claim that I'm the sole available caregiver, then I think it switches to abusive discretion to determine whether or not the reasons that you have given for being the sole available caregiver are, in fact, reasons that meet that standard. And I think that's part of what we're dealing with here. And it's sort of the second part that I'd like to look at is looking kind of at the standard of review and then looking at what Judge Walker did and whether or not this is something that would need to go back or this is something that can be affirmed based upon what he said. Now, if you look at this court's Guirin case, which is one, I hope I'm pronouncing that right, which is the one that, you know, gets cited over and over and over in these kind of briefs, you know, this court has said there's a range of choices or of choice for the district court. We cannot reverse just because we might come to a different conclusion. In particular, if the court follows, applies the correct legal standard, which we're arguing that the judge did in this case, follows proper procedures and makes, the decision is good unless he makes clearly erroneous factual findings. So let's look at what Judge Walker actually found. If you look at his order, he said that there are five children. Four of them are out of it. One of them died. One of them, I think, disappeared. Two are in the States. Fifth one is in Honduras. He then acknowledges that there's a distance issue. So he's aware of this issue in making, he's aware of this concern in making his decision. He says he's sympathetic to it, but he says he's also sympathetic and he notes that there are financial and child care issues. So it's not like he's not looking at the proper things when he's doing this. However, he notes that adult children facing ordinary constraints of daily lives, and ordinary, that particular word here is very important in this, because he's looking at what the government is arguing the standard should be. It shouldn't be something that's not extraordinary and compelling. So when he says, hey, this is the kind of thing that families have to deal with all the time, he's looking at the right standard here. And what he says is that, then he cites the Gonzalez case, and he cites that for the idea of not for the specific facts in there being the same, but for the idea of inconvenience. Inconvenience cannot be enough when you're looking at something that has to be extraordinary and compelling. And so at the end of the day, what we have here is a judge who looked at this, maybe didn't give his ideas on how this was going to work, but said, look, these are the kind of things that families have to deal with all the time. And so is this a situation where the father will have to move in, the grandfather will have to move in with Mr. Elmer, and him and his wife will have to do this, if there's some way for him to then share, like the court suggested with Ms. Reyna, a combination of all of that. But these are the kind of things that are not outside of what families across the United States, across the world, have to deal with all the time. And for this to be something that requires a defendant to be released from his prison sentence because he's the sole available caregiver, it has to be extraordinary and compelling reasons why he is the sole available caregiver in this situation. So while we have this idea of what the standard is, we also believe that the judge's order is appropriate. Obviously, if this court, for some reason, doesn't, there's a lot of reasons why, if it goes back, the court would have to address the things, including the 3553 factors, etc., etc. But we don't believe that it has to. We believe that if you actually look very carefully at what Judge Walker was saying, and it's a fairly brief statement, but it's a clear statement of what he was taking into account and he was looking at the proper things. So unless there's other questions, we believe that this case should be affirmed and we would ask the court to do that, please. Okay. Very well. Thank you so much. Ms. Silva, you've got three minutes remaining. I'd like to make a couple of points at the outset. First, Judge Walker's finding was insufficient. Clearly absent from his order is, sorry, clearly absent from his order is the degree of care that Mr. Jose Lorenzo needs. That means that wasn't considered at all. His grandson's unwillingness or willingness or even his ability wasn't considered from that order, in that order either. What Judge Walker did is that he found, he placed this caregiving burden on a grandson simply because the grandson lived in the same country as the grandfather, and that doesn't equate to being available. Instead, what Judge Walker should have done is that he should have highlighted what the Mr. Elmer could have taken care of those needs, which in this case, it's 24-hour needs. Let me ask you this, though. I mean, I understand that you're saying that there's a 24-hour need for caregiving here, but your client isn't providing. I mean, if I understand right, he's saying he's going to move to Honduras, live with the grandfather, but he's going to have to work. He's not going to be able to provide 24-hour care. That just seems like a disparity where we would be expecting your client. We were saying that Mr. Elmer can't do this because he can't provide 24-hour care, but your client also isn't providing 24-hour care, right? My client had to submit to the court under the 3553A factors that he can get a job, but if he is deported back to Honduras, he needs to assess the situation with his father, and if his father truly needs 24-hour care, which everything in the record uncontestedly says that he does, then that's where his emphasis will be at. It's with his father. That's his priority. The second thing I wanted to address that the government touched upon is this matter of inconvenience. Inconvenience in Gonzalez stems from case law that deals with subsection A, and particularly in Gonzalez, inconvenience was found because I believe the defendant's wife there, or husband, didn't provide enough information as to why a person was incapacitated. That's why the court said, well, there isn't enough here on the record that you're incapacitated, just only that you're inconvenienced. This inconvenience language doesn't apply here. It's an analysis for subsection A. And I want to say as well— Can I ask you to address—I want you to address my potential factors. So legal barrier, should consider whether there's a legal barrier, should consider whether there's a physical barrier, should consider whether there are any knowledge or educational barriers, should consider whether the alternative caregiver's barriers or unwillingness is somehow different or greater than the prisoner's barriers would be, and then I guess I would add, throw in, sort of consider the history or familiar relationship between the alternative caregiver and the person who needs the caregiving. What do you say about those factors, and is there anything else that, you know, write the opinion? What else should we say in the opinion? I think those factors work with the emphasis on whether an available caregiver can provide the degree of care that the incapacitated parent needs. But I think the most important thing in this case is that Judge Walker did not consider any of those factors in his order. Whether a familial relationship was strained, wasn't considered. Whether Mr. Elmer was able to provide the 24-hour care need, wasn't considered. Whether he was able to just pick up and move, just wasn't—it wasn't considered. And that's why here we ask that the court remand back with guidance as to what the factors should be for reconsideration, because that clearly wasn't done here. Instead, what Judge Walker did was simply equate being in the same country as to being available, and that just—it isn't reality. And we don't want to establish precedent where some—just simply because we live in the United States, maybe in another state, then you're simply just available. And to clarify, we're not asking the court to find that everyone who's four hours away is unavailable. We're asking the court to avoid finding that everyone who is within four hours is automatically available. And more so, I know that there might be a concern about, well, anybody can just say that they're unwilling, and so we're letting a lot of people out of prison because of that. But the court still has to go through the 3553A factors, and those are highly discretionary. And so it's not—we're not opening the floodgates here. And— Okay. I think we've taken over your time very well. Thank you so much.  That case is submitted, and we'll move straight on to the third case, which is Hubbert v.